# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

Paul Elliot Buresh,         )
)
         Petitioner,     )
)     Case No. 3:17-cv-152
       vs.         )
)  **REPORT AND RECOMMENDATION**
Chad Pringle, Warden,    )
)
         Respondent.    )

Paul Elliot Buresh petitioned for habeas relief under 28 U.S.C. § 2254. (Doc. #2). After preliminary review, the court ordered service on the respondent. (Doc. #5). The respondent filed a motion to dismiss, (Doc. #8), and Buresh responded to that motion, (Doc. #17; Doc. #18).

## Summary of Recommendation

Respondent contends that Buresh's petition is not timely and notes that the court did not receive the petition until nearly two months after Buresh declared that he placed the petition in the prison mailing system. Since there is a factual dispute regarding the date on which Buresh placed his petition in the prison mailing system and since the petition is subject to dismissal on other grounds, this court recommends bypassing the timeliness issue.

Buresh asserts that a state prosecutor violated his due process rights, but that claim is procedurally defaulted and, therefore, barred from federal court review. He also asserts three claims of ineffective assistance of trial counsel—one of which is also procedurally defaulted and barred from review. The state court's denial of the two other ineffective assistance of counsel claims was reasonable; thus, Buresh is not entitled to

habeas relief on those claims. This court, therefore, recommends that respondent's motion to dismiss be granted and that Buresh's habeas petition be dismissed.

## Background

Buresh was initially charged with fifteen counts of Unlawful Possession of Images of Sexual Conduct by a Minor. Pursuant to defense counsel's request, the state court ordered that Buresh undergo a competency and criminal responsibility evaluation at the North Dakota State Hospital. State v. Buresh, Walsh County Case No. 50-2012-CR-0001, Doc. ID# 12-14. Based on Buresh's report of having at least four personality states, the psychologist's diagnosis was "Rule out Dissociative Identity Disorder." (Doc. #2-2, p. 6). The psychologist determined that Buresh was competent to stand trial and that there were "no indications that any of the alleged conduct was the result of a loss or serious distortion of Mr. Buresh's capacity to recognize reality." Id. at 9-10.

After the psychologist's evaluation, the proceedings continued, and the court held a preliminary hearing. The day after the preliminary hearing, an Amended Information was filed, charging Buresh with 139 counts of Unlawful Possession of Images of Sexual Conduct by a Minor. Buresh, Walsh County Case No. 50-2012-CR-0001, at Doc. ID# 23. Pursuant to a written plea agreement and to North Carolina v. Alford, 400 U.S. 25 (1970), Buresh pleaded guilty to all 139 counts.[1] (Docs. #10-2 to -4). Criminal judgments on the 139 counts were entered on April 9, 2013.[2] (Doc. #10-4). Buresh did not directly

---

[1] Neither the plea agreement nor the criminal judgments reference Buresh's pleas having been entered pursuant to Alford, (see Docs. #10-3 to -4), but neither party disputes that Buresh entered Alford pleas to all of the charges.

[2] The state court sentenced Buresh to (1) five years of imprisonment on count 1; (2) five years of imprisonment on count 2, to be served consecutively to the sentence imposed on count 1; (3) five years of imprisonment, with two years suspended, and five

appeal the criminal judgments.

On April 10, 2014, Buresh filed a state application for post-conviction relief, (Doc. #10-6), and, after the state court appointed counsel to represent Buresh, counsel filed an amended post-conviction relief application alleging ineffective assistance of trial counsel, (Doc. #10-7). After an evidentiary hearing and post-hearing briefing, the state court found that Buresh "failed to establish that [he] was denied effective assistance of counsel or any manifest injustice in entering his pleas of guilty."[3] (Doc. #10-8, p. 14). On appeal, the North Dakota Supreme Court summarily affirmed the order denying post-conviction relief, <u>Buresh v. State</u>, 895 N.W.2d 313 (N.D. 2017) (per curiam), and issued its mandate on June 15, 2017, (Doc. #10-10, p. 2).

In his petition, Buresh alleges that trial counsel was ineffective by failing to (1) effectively communicate, (2) adequately explain the nature of an <u>Alford</u> plea, and (3) obtain an independent mental evaluation. (Doc. #2, p. 5). Buresh also contends that the prosecutor violated his due process rights by charging him with 139 counts of possession of unlawful images instead of one count since all of the images were stored on one

_____

years of supervised probation on count 3, to be served consecutively to the sentences imposed on counts 1 and 2; (4) five years of imprisonment, with all five years suspended, and five years of supervised probation on counts 4 through 11, all to be served consecutively to count 1 and to each other; and (5) five years of imprisonment, with all five years suspended, and five years of supervised probation on counts 12 through 139, all to be served consecutively to counts 1 through 11 but concurrently with each other. (Doc. #10-4). In total, the criminal judgments required Buresh to serve twelve years of imprisonment followed by a lengthy term of supervised probation.

[3] In its order denying post-conviction relief, the state court amended the criminal judgments, pursuant to <u>Peterka v. State</u>, 864 N.W.2d 745 (N.D. 2015), to reflect that all terms of supervised probation would be served concurrently for a total duration of no more than five years. (Doc. #10-8, p. 14).

device.[4] Id. at 6.

Respondent contends that Buresh's petition is not timely. Alternatively, respondent asserts that Buresh did not fairly present his claims to the North Dakota Supreme Court, that the petition is subject to dismissal as a "mixed petition" under Rose v. Lundy, 455 U.S. 509 (1982), that Buresh's claims are defaulted, and that the federal court is, therefore, prohibited from reviewing Buresh's claims. (Doc. #9). Further, respondent contends that, if the court considers the claims on the merits, Buresh is not entitled to habeas relief. Id.

## Law and Discussion

Buresh's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). Under the AEDPA, various conditions must be met before a federal court can consider a petitioner's claims on the merits—the claims must be timely and must be properly exhausted before the state courts. Even when the AEDPA allows the court to consider claims on the merits, the standard of review is extremely narrow. Federal habeas relief may not be granted unless the state court's decision was contrary to or an unreasonable application of federal law or unless the decision was an unreasonable determination of the facts in light of the evidence presented in the state courts. 28 U.S.C. § 2254(d). The Supreme Court has stated that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."

---

[4] Buresh's post-conviction proceedings were continued while Peterka v. State, 864 N.W.2d 745 (N.D. 2015) was before the North Dakota Supreme Court. In Peterka, the supreme court held that state law "authorizes multiple prosecutions and punishments based on the number of prohibited images possessed rather than on the number of computers possessed containing those images." 864 N.W.2d at 753.

<u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011). The Court further stated, "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state court proceedings." <u>Id.</u> It is against those standards that the court considers Buresh's habeas petition, beginning with respondent's claims of procedural defects in Buresh's petition.

**1.    Statute of Limitations**

     Respondent first contends that Buresh's habeas petition is not timely.

     The AEDPA imposes a one-year statute of limitations for filing federal habeas petitions. 28 U.S.C. § 2244(d)(1). Under the AEDPA, the one-year limitation period starts to run from the latest of several possible triggering dates, including the date on which a state court judgment became final by the conclusion of direct review or by the expiration of time for seeking such review. 28 U.S.C. § 2244(d)(1)(A).

     The judgments of conviction were filed on April 9, 2013, and Buresh had thirty days, or until May 9, 2013, to appeal those judgments. <u>See</u> N.D.R.App.P. 4(b)(1)(A). Therefore, Buresh's one-year limitation period for filing a habeas petition started to run on May 10, 2013.

     On April 10, 2014, Buresh filed his state post-conviction relief application. (Doc. #10-6). By that date, 335 days had elapsed on the one-year clock. A properly filed state post-conviction relief application tolls the one-year period. 28 U.S.C. § 2244(d)(2). The AEDPA statute of limitations was, therefore, tolled from the date Buresh filed his post-conviction relief application until the North Dakota Supreme Court issued its mandate on June 15, 2017, after affirming the state district court's order denying

post-conviction relief. See Payne v. Kemna, 441 F.3d 570, 572 (8th Cir. 2006) (stating that a state post-conviction relief application is pending until the mandate is issued). Thus, to be timely, Buresh's habeas petition needed to be placed in the prison mailing system no later than July 15, 2017, since thirty days of his one-year period remained when the mandate was issued.

In his habeas petition, Buresh declared, under penalty of perjury, that he placed his habeas petition in the prison mailing system on May 27, 2017. (Doc. #2, p. 14). But the Clerk did not receive Buresh's habeas petition until July 21, 2017. (Doc. #1). The Clerk did not file the petition on that date because Buresh had neither paid the filing fee nor moved to proceed in forma pauperis. On August 10, 2017, Buresh paid the filing fee and the Clerk then filed the petition.

Respondent states that "[i]t is unknown how nearly two months elapsed between Buresh's supposed [mailing of the petition] and the actual date this Court received the incomplete petition." (Doc. #9, p. 4). Respondent states, "If the filing date is July 21, 2017," the date the court received the habeas petition, "then Buresh's petition is untimely." Id. Respondent urges this court to dismiss on that basis. Id.

In response, Buresh contends that North Dakota Department of Corrections and Rehabilitation (DOCR) staff either negligently or intentionally failed to timely process his voucher request for the court's filing fee and mail his petition.[5] (Doc. #18, p. 2).

---

[5] Buresh submitted two exhibits in support of his declaration that he placed the petition in the prison mailing on May 27, 2017—an "Individual Transfer Voucher" and an inmate request form. (Doc. #19, pp. 3-4). The inmate request form, dated May 27, 2017, is addressed to the DOCR "Property/Mailroom." Id. at 4. It states, "Please issue a check to the United States District Court for $5.00, place in envelope and send to mail room for mailing[.]" Id. No response from DOCR staff appears on the form. The

Alternatively, Buresh states the postal service might have misplaced the envelope or that one of his alternate personalities might have "interfer[]ed in the mailing process." Id. at 3. In his response, Buresh states that he prepaid the postage prior to placing the petition in the prison mailing system. Id. at 2. He also argues for equitable tolling.

Under the prison mailbox rule, a habeas petition is deemed timely filed if it is placed in the prison mailing system on or before the last day for filing. Rules Governing Section 2254 Cases, Rule 3(d). A prisoner receives the benefit of the prison mailbox rule by demonstrating timely filing through a declaration or notarized statement (1) setting forth the date of deposit into the prison mailing system and (2) attesting that first-class postage was prepaid. Id.; Porchia v. Norris, 251 F.3d 1196, 1198 (8th Cir. 2001). Buresh declared, under penalty of perjury, that he placed the petition in the prison mailing system on May 27, 2017. While he asserted in his response that he prepaid the postage, he did not do so under penalty of perjury as required by Rule 3(d).

Because of the factual dispute about the date of mailing, it would be necessary to hold an evidentiary hearing to decide the statute of limitations question.[6] Rather than holding an evidentiary hearing, this court recommends bypassing the limitations issue since Buresh's habeas petition is subject to dismissal on other grounds. See Pough v.

_____

voucher, also dated May 27, 2017, and signed by Buresh, states that $5.00 should be charged to his inmate account. Id. at 3. The filing fee for filing a habeas petition is $5.00.

[6] See Grady v. United States, 269 F.3d 913, 918-19 (8th Cir. 2001) (stating that the district court should have resolved a factual dispute concerning the date on which a document was deposited in the prison mailing system by conducting an evidentiary hearing); Pierce v. Weber, No. Civ. 10-4055-KES, 2010 WL 4868214, at *2 (D.S.D. Nov. 23, 2010) (after considering competing affidavits regarding when an inmate deposited a habeas petition in the prison mailing system, the court converted the respondent's motion to dismiss to one for summary judgment and set an evidentiary hearing).

United States, 442 F.3d 959, 965 (6th Cir. 2006) ("Whether Pough has complied with the limitations period is . . . not an issue that we have to decide as a threshold matter, as we would have to do if satisfying the limitations period were a jurisdictional prerequisite."); Aron v. United States, 291 F.3d 708, 718 (11th Cir. 2002) (Carnes, J., concurring) ("[A] district court is not required to rule on whether an asserted statute of limitations bar applies if the § 2255 motion may be denied on other grounds.").

## 2.    Exhaustion

Respondent contends that Buresh did not properly exhaust all of his claims before the state courts and that Buresh's petition is, therefore, subject to dismissal under Rose v. Lundy, 455 U.S. 509 (1982).

Before seeking federal habeas relief, a petitioner must "fairly present" his federal habeas claim to the state courts. Turnage v. Fabian, 606 F.3d 933, 936 (8th Cir. 2010). "To 'fairly present' his claim, the petitioner must [have] present[ed] the same facts and legal theories to the state court that he later presented to the federal courts." Jones v. Jerrison, 20 F.3d 849, 854 (8th Cir. 1994). The claim need not be an "exact duplicate," Odem v. Hopkins, 192 F.3d 772, 776 (8th Cir. 1999), but "the federal claim should not present significant additional facts such that the claim was not fairly presented to the state court," Kenley v. Armontrout, 937 F.2d 1298, 1302 (8th Cir. 1991). There must be "at least an arguable factual commonality." Id. at 1303 (internal quotation marks omitted).

Respondent contends that Buresh did not present claims identical to his current claims during the state post-conviction proceedings. (Doc. #9, p. 8). Respondent contends that Buresh did not present his due process claim to the North Dakota

Supreme Court and that the only ineffective assistance of counsel claims presented in the state courts related to insufficient contact between Buresh and his trial counsel and Buresh's lack of understanding of his Alford pleas. Id. Respondent argues claims of ineffective assistance of counsel relating to not communicating effectively and not adequately explaining an Alford plea were not presented to the state courts.

In this court's view, Buresh's amended post-conviction relief application and testimony at the evidentiary hearing raised all of the ineffective assistance of counsel claims he now makes in his federal habeas petition.[7] And the state court addressed each of those ineffective assistance of counsel claims in its order denying post-conviction relief.[8] In his amended post-conviction relief application, Buresh contended that his trial counsel was ineffective in failing to "seek a second opinion" regarding Buresh's mental examination. (Doc. #10-7, p. 4). And at the evidentiary hearing, Buresh testified regarding trial counsel's alleged ineffective communication and failure to adequately explain the nature of an Alford plea. (Doc. #10-14, pp. 8-14, 63-64, 67, 132). Additionally, Buresh's appellate brief alleged that his trial counsel did not effectively

---

[7] Buresh raised his due process claim in his pro se post-conviction relief application, (see Doc. #10-6, pp. 14-16), but his court-appointed counsel did not raise that claim in the amended application, (see Doc. #10-7), and the state court did not address that claim in its order denying post conviction relief, (see Doc. #10-8).

[8] The district court described Buresh's claims:

[Trial counsel] 1) failed to maintain sufficient contact and communication with Buresh, 2) failed to provide him with and review discovery documents with him, and 3) failed to adequately review and explain the terms of the plea agreement with him. As a result of all of this, Buresh claims that he was not aware of what he signed and its terms and that he was unaware that by signing the plea agreement he was admitting to guilt.

(Doc. #10-8, p. 6).

communicate with him nor adequately explain the nature of an <u>Alford</u> plea. (Doc. #10-11, pp. 6-7, 10-12). Thus, Buresh fairly presented those two ineffective assistance of counsel claims to the state courts, and they are properly exhausted.

Buresh did not, however, raise two of his claims before the state supreme court: (1) that his trial counsel was ineffective in failing to obtain an independent mental examination or (2) that the prosecutor violated his due process rights. (<u>See</u> Doc. #10-11). Though acknowledging there is no longer any avenue for Buresh to exhaust those claims, respondent nonetheless contends those claims are unexhausted. In actuality, those claims are technically exhausted rather than unexhausted.

A petitioner satisfies the exhaustion requirement by showing either that he fairly presented his claims <u>or</u> that he has no other available state remedies to pursue. <u>Gentry v. Lansdown</u>, 175 F.3d 1082, 1083 (8th Cir. 1999); <u>see also</u> <u>Dixon v. Dormire</u>, 263 F.3d 774, 777 (8th Cir. 2001) (quoting <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 847 (1999)) (emphasizing that the exhaustion doctrine "turns on an inquiry into what procedures are 'available' under the state law"). "In habeas, state-court remedies are described as having been 'exhausted' when they are no longer available, regardless of the reason for their unavailability." <u>Woodford v. Ngo</u>, 548 U.S. 81, 92-93 (2006). If a petitioner failed to raise his claims before the state courts in accordance with state procedural requirements, and those claims are consequently barred from state court review, those claims are considered "technically exhausted." <u>Id.</u> at 93.

Since Buresh has no presently available state procedure to exhaust his claims that trial counsel was ineffective in failing to obtain an independent mental examination and that the prosecutor violated his due process rights, those claims are not unexhausted.

Rather, they are technically exhausted.

Because all of Buresh's claims are either exhausted or technically exhausted, his petition in not subject to dismissal pursuant to <u>Rose v. Lundy</u> as respondent contends. <u>Rose v. Lundy</u> holds that § 2254(b)(1)(A) prohibits this court from considering a "mixed petition"—that is, one that includes both exhausted <u>and</u> unexhausted claims. 455 U.S. at 518-19. Since Buresh's petition contains no unexhausted claims, it is not subject to dismissal as a "mixed petition."

## 3.   Procedural Default

Respondent also contends that Buresh's claims that trial counsel was ineffective in failing to obtain an independent mental examination and that the prosecutor violated his due process rights are barred—that is, procedurally defaulted—from state court review by res judicata and for misuse of process.[9] (Doc. #9, p. 9).

Claims that were not fairly presented to the supreme court on direct appeal are barred from state court review for misuse of process. <u>See</u> N.D. Cent. Code § 29-32.1-12(2); <u>State v. Steen</u>, 736 N.W.2d 457, 462 (N.D. 2007); <u>Laib v. State</u>, 705 N.W.2d 845, 848 (N.D. 2005); <u>Johnson v. State</u>, 681 N.W.2d 769, 775-76 (N.D. 2004). "A failure to exhaust remedies in accordance with state procedure results in procedural default of the prisoner's claims." <u>Welch v. Lund</u>, 616 F.3d 756, 758 (8th Cir. 2010).

---

[9] Under North Dakota Century Code section 29-32.1-12, misuse of process is an affirmative defense that can be raised in state court post-conviction proceedings. Misuse of process is defined to include any "claim for relief which the applicant inexcusably failed to raise either in a proceeding leading to judgment of conviction and sentence or in a previous postconviction proceeding." N.D. Cent. Code § 29-32.1-12(2)(a). The procedural defense is regularly enforced by North Dakota courts. <u>See</u> <u>State v. Steen</u>, 736 N.W.2d 457, 462 (N.D. 2007); <u>Laib v. State</u>, 705 N.W.2d 845, 848 (N.D. 2005); <u>Johnson v. State</u>, 681 N.W.2d 769, 775-76 (N.D. 2004).

Buresh failed to appeal the due process and mental examination claims in accordance with the North Dakota Supreme Court's rules. Therefore, those two claims are procedurally defaulted because he did not invoke "one complete round" of the appellate process and so failed to fairly present his claims to the state courts in accordance with state procedure.[10]

Because of Buresh's procedural default, this court cannot review the merits of the two defaulted claims unless he demonstrates cause and prejudice for the default or unless he demonstrates that a miscarriage of justice would result if this court did not address their merits. See McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997). Buresh has not alleged cause and prejudice for the default; nor has he alleged that failure to consider the claims would result in a fundamental miscarriage of justice. Since he has not met the cause and prejudice or miscarriage of justice standards, the federal court cannot review the merits of Buresh's defaulted claims, and his claims that trial counsel was ineffective in failing to obtain an independent mental examination and that the prosecutor violated his due process rights should be dismissed.

## 4.    Non-Defaulted Ineffective Assistance of Counsel Claims

As discussed above, Buresh properly exhausted two claims—that trial counsel did not effectively communicate with him nor adequately explain the nature of an Alford plea. The court will, therefore, consider the merits of those claims.

To establish a claim of ineffective assistance of counsel, a petitioner must show

---

[10] A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim." Gray v. Netherland, 518 U.S. 152, 162 (1996).

that his counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984). In Strickland, the Supreme Court established a two-pronged test for analyzing ineffective assistance of counsel claims. First, a petitioner must show that his counsel's conduct was objectively unreasonable. Second, a petitioner must demonstrate that he was prejudiced by his counsel's performance. Under the prejudice prong, a petitioner must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694. In the context of guilty pleas, petitioner must prove that he would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985). Both prongs of the Strickland test—error and prejudice—must be satisfied to prevail on an ineffective assistance of counsel claim.

In reviewing ineffective assistance of counsel claims, courts apply a strong presumption that counsel provided "adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. A court reviewing counsel's performance must make every effort to eliminate hindsight and second-guessing. Id. at 689. Under the Strickland standard, counsel's strategic decisions regarding plausible options, made after thorough investigation of both law and facts, are virtually unchallengeable. Id. at 690. Additionally, each claim of ineffectiveness must be separately considered since the "cumulative effect of alleged trial counsel errors is not grounds for granting habeas relief." Middleton v. Roper, 455 F.3d 838, 851 (8th Cir. 2006).

13

A "doubly deferential" standard of review applies to ineffective assistance of counsel claims in a § 2254 petition. <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, the court must take a "highly deferential look at counsel's performance [under <u>Strickland</u>] through the deferential lens of § 2254(d)." <u>Cullen v. Pinholster</u>, 563 U.S. 170, 190 (2011) (internal citations and quotation marks omitted). So long as a state court's application of <u>Strickland</u> was reasonable, a petitioner cannot succeed on an ineffective assistance of counsel claim under § 2254(d)'s standard.

Applying these standards, the court next considers the merits of the two ineffective assistance of counsel claims that are not defaulted.

### A.  Ineffective Assistance of Counsel—Failure to Effectively Communicate

Buresh contends that he "has a learning disability and does not understand conversations," that he informed trial counsel of his learning disability, that he requested that trial counsel communicate with him through written correspondence, but that trial counsel did not do so. (Doc. #2, p. 5).

At the evidentiary hearing on Buresh's post-conviction relief application, Buresh testified that, the first time they met, he informed his trial counsel—Theodore Sandberg—that Buresh has a learning disability that makes it difficult for him to understand and that "it's easier for [him] to communicate with writing." (Doc. #10-14, pp. 8, 10-11). Buresh testified that Sandberg met with him only four times, never spoke with him on the phone, provided no substantive written communications, provided no discovery, and failed to answer his questions. <u>Id.</u> at 8-9, 63.

Sandberg testified that, because of Buresh's mental health issues, he preferred to meet with Buresh in person "to answer questions and explain things," which included reviewing any letter that Buresh had written to Sandberg—"line by line"—and discussing any substantive issues. Id. at 81, 106, 109. Sandberg testified that he met with Buresh at the jail four to six times and that, in addition to those meetings, he met with Buresh at the courthouse before and after his preliminary hearing and before and after his change of plea hearing. Id. at 82-88. Sandberg also testified that Buresh's former counsel had provided discovery to Buresh and that Buresh told Sandberg that he had received that discovery.

Sandberg testified that he was aware of Buresh's learning disability but that Buresh "appeared to understand everything," "he had no trouble writing," and "he had no trouble comprehending what was happening." Id. at 88, 122, 125-26. Sandberg explained that, at times, Buresh "clearly understood" but, at other times, Sandberg had to "back up and re-explain." Id. at 88. Sandberg further explained that needing to reexplain information to criminal defendants is common and that Buresh did not have any more trouble understanding than any other defendant. Id. at 88-89. Sandberg testified that Buresh's questions were appropriate, and he described Buresh as "much more articulate, well spoken, well behaved, probably more than even a lot of [his] other clients that [he] would deal with." Id. at 90, 122.

After thoroughly discussing the hearing testimony, the state court, crediting Sandberg's recollection, found that the evidence was "insufficient to establish that Buresh was denied effective assistance of counsel in Sandberg's communication and contact with Buresh." (Doc. #10-8, pp. 6-11).

15

It making its credibility determination, the state trial court stated:

> I find that Sandberg's recollection of the communication and contact he had with Buresh, discovery provided to him, and events leading up to and at Buresh's change of plea were far more reliable than that recalled by Buresh. Buresh claims that no discovery materials or communication was effectively provided to him and that he did not understand matters prior to entry of plea. However, Buresh is well educated, claiming not only a high school degree but also a B.A. in some form of computer gaming design. Further, he served 20 years in the military, and at the time of his arrest was currently employed. He was present throughout the preliminary hearing where detailed evidence was presented regarding the reasons for the seizure of his computer and the contents found on it and the search inquiries made from it that would seek out pornographic images of children. Buresh's testimony is much more conclusory and lacks the detail offered by Sandberg. Further, it is self-serving and lacks corroboration from other evidence in the record, including Buresh's responses to questions at his change of plea.

(Doc. #10-8, pp. 11-12). The supreme court summarily affirmed that decision. Buresh, 895 N.W.2d 313.[11]

A state court's credibility determinations are presumed correct. Robinson v. La Fleur, 225 F.3d 950, 953 (8th Cir. 2000). "A federal court can only grant habeas relief if the state court's credibility determinations were objectively unreasonable." Smulls v. Roper, 535 F.3d 853, 864 (8th Cir. 2008). Here, the state court thoroughly explained its reasons for finding Sandberg's testimony more credible than Buresh's, and its explanation was reasonable. Since Buresh has not established that Sandberg failed to effectively communicate with him, the state court's denial of that ineffective assistance of counsel claim was reasonable under § 2254(d).

---

[11] Because the North Dakota Supreme Court provided no explanation in its summary decision, the federal court must "look through" that unexplained order to the lower court's rationale for denying Buresh's two ineffective assistance of counsel claims. See Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

**B.     Ineffective Assistance of Counsel—Failure to Adequately Explain <u>Alford</u> Plea**

Buresh contends that his trial counsel failed to effectively advise him regarding the nature of an <u>Alford</u> plea. Buresh contends that he believed by entering an <u>Alford</u> plea, "he was pleading not guilty, but acknowledg[ing] there was no way for him to prove his innocence." (Doc. #2, p. 5).

At the evidentiary hearing, Buresh testified that he understood that he "would <u>not</u> be pleading guilty; and that [the jury] would probably find [him] guilty regardless, if [they] went to trial." (Doc. #10-14, p. 12) (emphasis added). Buresh testified that he believed an <u>Alford</u> plea meant "not guilty" but rather an inability "to prove that [he] was innocent." <u>Id.</u> at 67. He testified that he had only two minutes to review the plea agreement before signing it, he did not understand the plea agreement, and, if he had known then what he now knows, he would not have pleaded guilty. <u>Id.</u> at 13-14. Buresh admitted that the state court judge read the terms of the plea agreement on the record but stated that, at that time, he did not realize that he could request more time or convey that he did not understand the plea agreement. <u>Id.</u> at 24, 81.

Sandberg testified that, at the courthouse both before and after Buresh's preliminary hearing, he and Buresh discussed plea agreements. <u>Id.</u> at 94. He further testified they again discussed plea agreements at the jail, and they also discussed the preliminary hearing testimony and various potential strategies. <u>Id.</u> at 94-97. Sandberg testified that, after the preliminary hearing, Buresh concluded that no jury would find him not guilty, Buresh "was very motivated to try and resolve the case," Buresh wanted to explore the possibility of a plea agreement, and Buresh "was kind of in the realm of

17

accepting somewhere between six and eight years." <u>Id.</u> at 94-97, 111. Sandberg testified that he then engaged in extensive plea negotiations with the State; he discussed those negotiations with Buresh who expressed "when he was not satisfied with a particular deal"; Buresh eventually came to an agreement with the State; and Sandberg wrote the terms of the plea agreement on a notepad, in Buresh's presence, to ensure that Buresh understood. <u>Id.</u> at 94-92, 111, 119-20.

Sandberg testified that the details of the plea agreement were "worked out . . . long in advance" of the change of plea hearing—well before the change of plea hearing was scheduled—that Buresh knew the terms of the plea agreement before the agreement was formally typed; that Buresh accepted those terms on two occasions; that, after the agreement was in its final format, he and Buresh reviewed the terms of the plea agreement and had "ample time" to do so; and that, following "at least two or three weeks of contemplation and meetings," Buresh signed the plea agreement just prior to the change of plea hearing. <u>Id.</u> at 101-04, 118. Sandberg further testified that he advised Buresh of the nature of an <u>Alford</u> plea and that, in Sanberg's opinion, Buresh understood the nature of an <u>Alford</u> plea. <u>Id.</u> at 101-03.

During rebuttal, Buresh disputed Sandberg's testimony, describing it as "false." <u>Id.</u> at 134. Buresh testified that he did not recall Sandberg ever writing anything on a notepad, he did not know the terms of the plea agreement until the change of plea hearing, he felt rushed, and he did "not really" comprehend what he was doing when he signed the plea agreement because of his learning disability. <u>Id.</u> at 131-33.

The state court, crediting Sandberg's recollection over Buresh's, found that counsel was not ineffective with regard to Buresh's <u>Alford</u> plea, (Doc. #10, p. 12), and

18

the supreme court summarily affirmed that decision, <u>Buresh</u>, 895 N.W.2d 313.

In his response to the motion to dismiss, Buresh contends, consistent with his hearing testimony, that he "did not understand the <u>Alford</u> plea, and [he] really did not understand what was going on." (Doc. #17, p. 4). Buresh also contends that Sandberg told him to enter an <u>Alford</u> plea because they "could not fight the charges," that he "was forced to rely on inadequate and incomplete facts and information," and that he "was unable to make a strategic or informed decision regarding going to trial or not." <u>Id.</u> Thus, he asserts he "mistakenly entered" his <u>Alford</u> plea. <u>Id.</u>

Aside from the lack of evidentiary hearing testimony that Sandberg "told" Buresh to enter an <u>Alford</u> plea,[12] the state court stated that "[a] significant time was spent in court with Buresh on the record addressing the plea agreement terms. Before accepting the plea agreement in the courtroom, it was evident that Buresh knowingly and intelligently understood what he signed and its terms." (Doc. #10-8, p. 10). The state court thoroughly explained its reasons for that finding:

1. Notwithstanding Buresh's execution of the written plea agreement, this Court reviewed it with him in detail.

2. Prior to doing so, this Court inquired of Buresh if he was under the influence of any alcohol or drugs or impaired by the use of any medications or anything else or had any mental or physical disability. He denied that he suffered any condition that would prevent him from understanding what he was doing that day. He also acknowledged he could read and write and described his educational background, which was extensive.

---

[12] Buresh did not specifically testify that Sandberg told him to enter an <u>Alford</u> plea. But he testified that, two minutes prior to the change of plea hearing, Sandberg gave him the plea agreement and said, "Here it is. This is what we've got . . . . Sign it, and let's go." (Doc. #10-14, p. 14).

3.    This Court then reviewed in detail not only the charges with Buresh but also the proposed dispositions contained in the plea agreement. That included an explanation that within the limits of argument for something less, upon his pleas of guilty, this Court had the authority to impose sentences resulting in up to 12 years of incarceration, followed by probation. Buresh indicated that he understood all of these things.

4.    This Court then explained the distinction between consecutive and concurrent and verified that Buresh understood that. This Court verified on the record in court that day that Buresh signed the plea agreement and agreed to the terms of it of his own free will and without threats or promises.

5.    The Court also noted the referenced mental disorder described by Buresh but verified that Buresh was able to understand everything he was doing that day as it related to the plea agreement.

6.    After verifying all of these things, the Court then addressed elements of the charges to verify Buresh understood what the State would have to prove, and Buresh indicated that he understood all of this. Finally, this Court, after again addressing additional mandatory penalties, verified that Buresh understood those and also acknowledged that he was waiving any claim of lack of criminal responsibility.

7.    After going through all of the above and other matters with the defendant as contained in the record that day of March 19, 2013, the defendant entered pleas of guilty pursuant to an Alford plea. Upon reviewing the evidence presented, this Court was satisfied that it could accept the defendant's Alford pleas. Sentencing occurred on a later date.

Id. at 10-11. The state court found that:

Buresh's claim that he had no intention of entering a plea of guilty is completely inconsistent with other evidence. By his own statements made on the day on which he entered a plea of guilty, he indicated and represented to this Court that he fully understood what he was doing and what the consequences would be. That is verified in turn by Sandberg's own testimony regarding his private discussions with Buresh on that date and prior dates.

Id. at 12.

As discussed above, the state court's credibility determinations are entitled to

deference. Considering Sandberg's testimony and the state court's description of the

change of plea hearing, the state court's determination that Buresh knew he was pleading guilty is not unreasonable. Since Buresh has not established that Sandberg failed to adequately explain the nature of an <u>Alford</u> plea, the state court's denial of that ineffective assistance of counsel claim was reasonable under § 2254(d).

**Recommendation**

Since there is a factual dispute regarding the date on which Buresh placed his petition in the prison mailing system and since the petition is subject to dismissal on other grounds that would not require an evidentiary hearing, this court recommends bypassing the statute of limitations issue.

Buresh's claims that trial counsel was ineffective in failing to obtain an independent mental examination and that the prosecutor violated Buresh's due process rights are procedurally defaulted and barred from federal court review. Buresh is not entitled to habeas relief on his claims that trial counsel was ineffective by failing to effectively communicate and by failing to adequately explain the nature of an <u>Alford</u> plea because the state court's denial of those claims was reasonable under § 2254(d). Accordingly, it is **RECOMMENDED** that the respondent's motion to dismiss, (Doc. #8), be **GRANTED** and that Buresh's petition for habeas relief, (Doc. #2), be **DISMISSED** with prejudice.

Based upon the entire record, the district judge should conclude that dismissal of the petition is not debatable, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings. It is, therefore, **RECOMMENDED** that a certificate of appealability not be issued by this court. <u>See</u> <u>Tiedeman v. Benson</u>, 122 F.3d 518, 522 (8th Cir. 1997) (finding that a district court possesses the authority to issue

certificates of appealability under § 2253(c)). It is further **RECOMMENDED** that the court find that any appeal would be frivolous, could not be taken in good faith, and may not be taken in forma pauperis.

Dated this 21st day of February, 2018.

 /s/ *Alice R. Senechal*
Alice R. Senechal
United States Magistrate Judge

## NOTICE OF RIGHT TO OBJECT[13]

Any party may object to this Report and Recommendation by filing with the Clerk of Court no later than **March 7, 2018**, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.

---

[13] See Fed. R. Civ. P. 72(b); D.N.D. Civ. L.R. 72.1.